# United States Court of Appeals
## For the First Circuit

---

No. 99-2128

DAVID SUSTACHE-RIVERA,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

---

Before

Boudin, <u>Circuit Judge</u>,
Bownes, <u>Senior Circuit Judge</u>, and
Lynch, <u>Circuit Judge</u>.

---

<u>Christopher R. Goddu</u>, with whom <u>Willcox, Pirozzolo & McCarthy</u> was on brief, for petitioner.
<u>Michelle Morales</u>, Assistant United States Attorney, with whom <u>Guillermo Gil</u>, United States Attorney, and <u>Jorge E. Vega-Pacheco</u>, Assistant United States Attorney, were on brief, for respondent.

---

July 25, 2000

---

**LYNCH, Circuit Judge**.  In March 1993, a jury convicted David Sustache-Rivera (Sustache) of three separate carjackings in violation of 18 U.S.C. § 2119.  If a carjacking results in "serious bodily injury," then the statute allows for a greater length of imprisonment.  The judge found that one of the carjackings had resulted in serious bodily injury and so imposed a greater sentence.  All told, Sustache was sentenced to thirty-seven years in prison for the crimes.[1]  He was twenty years old at the time.  His convictions were affirmed on appeal.  See United States v. Sustache-Rivera, 39 F.3d 1166 (1st Cir. 1994) (unpublished).  Sustache's first habeas petition under 28 U.S.C. § 2255 was dismissed by the district court.[2]  He now requests a certificate of appealability from this court so that he may file

---

[1]     Sustache was sentenced to two 12-year terms of imprisonment for the other two carjackings, to be served concurrently with each other but consecutively to the 25-year term.  What is at stake in this case are the additional years of Sustache's federal sentence for the third carjacking.

[2]     Section 2255 uses the term "motion" rather than the term "petition."  We use the term "petition" throughout this opinion, though, as it is more commonly used to describe the process by which a prisoner seeks post-conviction relief.  See Pratt v. United States, 129 F.3d 54, 56 n.1 (1st Cir. 1997).

a second § 2255 petition.  We decline to issue the certificate and dismiss the case.

**I.**

Sustache was charged with three separate carjackings under 18 U.S.C. § 2119.  One of the counts specifically charged Sustache under 18 U.S.C. § 2119(2) -- the subsection that allows a longer sentence if the carjacking results in serious bodily injury -- and detailed the injuries one of the victims, Dr. José Aurelio Dávila-Sánchez, received as a result of being shot three times.  At trial, Dávila-Sánchez's brother, José Miguel Betancourt-Sánchez, who was with Dávila-Sánchez during the carjacking, testified regarding the injuries they received.  According to his testimony, both men had been shot at many times.  After an initial wave of gunfire, Dávila-Sánchez was left bleeding and asking to be taken to the hospital.  Then came a second wave of gunfire, during which Betancourt-Sánchez attempted to protect his brother from further injury; but both were shot, one bullet penetrating Betancourt-Sánchez and then entering his brother's stomach.  The Pre-Sentence Report revealed that, as a result of his wounds, Dávila-Sánchez's leg had to be amputated and he lost the use of his left hand.

-3-

The question of whether serious bodily injury occurred in the carjacking was not submitted to the jury, but was decided by the judge at sentencing. At the time of Sustache's trial and direct appeal, the law of this circuit was silent as to whether the question of serious bodily injury was an element of the crime to be determined by a jury or was merely a sentencing enhancement to be determined by the judge. We later held that the occurrence of serious bodily injury was merely a sentencing enhancement. See United States v. Rivera-Gomez, 67 F.3d 993, 1000 (1st Cir. 1995). Other circuits that had decided the question shared this view. See, e.g., United States v. Oliver, 60 F.3d 547, 552 (9th Cir. 1995); United States v. Williams, 51 F.3d 1004, 1009 (11th Cir. 1995). The Supreme Court, however, held in Jones v. United States, 526 U.S. 227, 251-52 (1999), that the serious bodily injury requirement in 18 U.S.C. § 2119(2) is an element of a carjacking offense and so must be submitted to the jury.

Sustache, naturally, now wants to raise the claim that his sentence should be vacated because the judge, not the jury, determined the serious bodily injury element. The claim concerns not only who should have decided the matter, but also

-4-

what the government's burden of proof should have been. An element of a crime must be proven by the government beyond a reasonable doubt. See id. at 232. By contrast, sentencing enhancements are decided upon a preponderance of the evidence. See United States v. Lombard, 72 F.3d 170, 176 (1st Cir. 1995).

The question here is whether Sustache has a vehicle to raise the claim pursuant to 28 U.S.C. § 2255, either as a first petition, or by permission of this court as a second or successive petition or a petition falling within the section's savings clause.[3] Congress imposed a number of bars to federal

---

[3] The procedural posture in which the question comes to us is dictated by AEDPA, the Antiterrorism and Effective Death Penalty Act of 1996, Pub. Law No. 104-132, 110 Stat. 1214. This court initially denied Sustache's application for leave to file a successive § 2255 petition, but required briefing on two issues:

> 1. Under what conditions, if any, does an intervening Supreme Court decision, which changes the substantive law under which a petitioner has been convicted, render the remedy afforded by 28 U.S.C. § 2255 "inadequate or ineffective" for a successive habeas petitioner? If such conditions exist, what alternate remedies are available? See Wofford v. Scott, 177 F.3d 1236 (11th Cir. 1999).

> 2. Has the Supreme Court decision in Jones v. United States, 119 S. Ct. 1215 (1999), rendered the remedy afforded petitioner Sustache Rivera "inadequate or ineffective," and, if so, what alternate remedies are available to him?

In addition, we gave the parties the opportunity, which each took, to brief this question:

prisoners' efforts to obtain post-conviction relief when it enacted AEDPA, the Antiterrorism and Effective Death Penalty Act of 1996, Pub. Law No. 104-132, 110 Stat. 1214, which governs this petition. Counting literally, this is Sustache's second § 2255 petition. Sustache filed a pro se petition under § 2255 in 1997 that raised a claim of ineffective assistance of counsel but did not raise the Jones claim.[4] That petition was dismissed on its merits by the district court. Sustache's current attempt to correct the error that occurred at his trial is limited by AEDPA. AEDPA § 105 amended 28 U.S.C. § 2255 so that "second or successive" § 2255 petitions will not be heard unless the court of appeals grants leave to file the petition. See 28 U.S.C. §§ 2255, 2244(b)(3). The court may not grant such leave unless the petition is based on:

> a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.[5]

---

3. Under the circumstances, is this a second or successive petition?

[4]   At the time of Sustache's 1997 pro se § 2255 petition, our decision in Rivera-Gomez foreclosed any Jones argument.

[5]   The court may also grant leave to file a second or successive petition based upon "newly discovered evidence," 28 U.S.C. § 2255, but

28 U.S.C. § 2255.

Sustache's efforts to apply the new Jones rule are thus stymied unless: (1) this petition is considered to be a first petition; or (2) he meets the gatekeeping requirements for second or successive petitions; or (3) his claim fits within § 2255's savings clause for cases in which § 2255 provides an "inadequate or ineffective" remedy.[6]

## II.

Sustache asserts that this petition should be considered a first petition because the new Jones rule was not available to him earlier. Treating this petition as a first petition has both substantive and procedural advantages for him. Substantively, if this were a first petition, he could raise a claim that his sentence "was imposed in violation of the laws of the United States." 28 U.S.C. § 2255. In other words, he would not be restricted to constitutional claims. Procedurally, he would not need permission from this court to file such a claim.

---

Sustache makes no claim that his petition is so based.

[6] 28 U.S.C. § 2255 reads, in pertinent part: "An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained . . . unless it . . . appears that the remedy by motion is inadequate or ineffective to test the legality of his detention."

We also consider whether, assuming Sustache's petition should be treated as a second or successive § 2255 petition, his petition meets the requirements for such petitions in light of the Supreme Court's recent decision in Apprendi v. New Jersey, No. 99-478, 2000 WL 807189 (U.S. June 26, 2000), issued after oral argument in this case.

Sustache's final argument is that his claim fits within the savings clause of § 2255. If a petitioner's § 2255 remedy is inadequate or ineffective, then he may apply for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, the general habeas corpus statute. See 28 U.S.C. § 2255. Recognizing the danger that the exception could easily swallow the rule and frustrate Congress' purpose in enacting AEDPA, the courts of appeals have read this exception narrowly. Nonetheless, Sustache says that fairness demands he at least be given the opportunity to present his claims and that, therefore, his claim should be found to fit within the savings clause. Otherwise, he says, § 2255 leaves him trapped in a procedural morass: even though Jones now makes clear that the trial court erred (resulting, he says, in a longer prison sentence), he cannot correct this error merely because he failed to raise it in his first § 2255 petition, at

-8-

a time when he had no reason to anticipate <u>Jones</u>.

Because this area is a procedural maze for parties and courts, an outline of our holdings in this case may be helpful:

1. We are not inclined to view Sustache's petition as a first petition. Even if it were, it would fail for the reasons stated below.

2. Sustache's petition does not meet the gatekeeping requirements of § 2255 for second or successive petitions; this is so even if <u>Jones</u> does represent a new rule of constitutional law, because the Supreme Court has not made <u>Jones</u> retroactive to cases on collateral review.

3. Whether Sustache's petition falls within § 2255's savings clause is a matter we need not resolve.

4. Because Sustache did not present the <u>Jones</u> claim before, he must show cause and prejudice to present it now, and Sustache has no plausible claim of prejudice.

A. <u>Is This a First or a "Second or Successive" Petition?</u>

Sustache concedes that his petition is literally second, but says that an exception should be carved out for claims that could not reasonably have been presented earlier.

Not every literally second or successive § 2255

petition is second or successive for purposes of AEDPA. See Stewart v. Martinez-Villareal, 523 U.S. 637, 643-46 (1998). The Supreme Court and this court have outlined several situations in which a later petition is not "second or successive:" (1) where the later petition raises the same grounds as a previous petition that had been dismissed as premature, see id.; (2) where a state prisoner's later petition raises the same grounds as a previous petition that had been dismissed for failure to exhaust state remedies, see Slack v. McDaniel, 120 S. Ct. 1595, 1604-05 (2000); Dickinson v. Maine, 101 F.3d 791 (1st Cir. 1996); (3) where the earlier petition terminated without a judgment on the merits, see Pratt v. United States, 129 F.3d 54, 60 (1st Cir. 1997); or (4) where the later petition attacks a different criminal judgment, such as where a prisoner who has successfully brought a first habeas claim is retried, reconvicted, and resentenced and then attacks the new judgment, see Pratt, 129 F.3d at 62; see also Shepeck v. United States, 150 F.3d 800, 801 (7th Cir. 1998) (later petition presenting issues that were unripe until re-sentencing that resulted from

-10-

first petition not second or successive).[7]  The first three exceptions involve nominally successive petitions that are really extensions of original petitions that, for technical or prematurity reasons, were not addressed on the merits.  The fourth exception is for a petition attacking an entirely different criminal judgment than was attacked in the first petition.

Sustache contends that another exception should be carved out where the prisoner could not reasonably have presented his claim in an earlier petition.  More precisely, Sustache argues that a § 2255 petition should not be treated as second or successive where a facially meritorious basis for relief becomes available for the first time -- due to a change in law -- after a previous § 2255 petition has already been filed and litigated.  Some support for this position might be thought to come from this court's language in Pratt, where we noted, "As a general rule, a prisoner who had both the incentive

<hr />

[7]     Other circuits have created at least two other exceptions: (1) where the earlier petition was rejected for failure to pay a filing fee or for errors of form; and (2) where the earlier petition was mislabeled as a § 2255 but was really a § 2241 petition challenging the execution, but not the validity, of the sentence. See United States v. Barrett, 178 F.3d 34, 43 (1st Cir. 1999) (collecting cases).

-11-

and the ability to raise a particular claim in his first petition for post-conviction relief, but declined to assert it, cannot raise it the second time around." Pratt, 129 F.3d at 62. Yet, from this language it does not follow that a prisoner who lacked the incentive or ability to raise a particular claim in his first petition, and so declined to assert it, necessarily may raise it the second time around -- the gist of Sustache's position.[8]

A similar argument for Sustache's position might be constructed from our decision in United States v. Barrett, 178 F.3d 34 (1st Cir. 1999), where we held that

> as a general matter, if a petition falls under the modified res judicata rule known as the abuse of the writ doctrine -- because, for example, it raises a claim that could have been properly raised and decided in a previous § 2255 petition -- it also falls within the definition of "second or successive."

---

[8]     Moreover, the language in Pratt occurs in the context of a petition brought after the prisoner had successfully brought an initial petition and was retried, reconvicted, and resentenced. See Pratt, 129 F.3d at 62. The court in Pratt went on to state that while the prisoner could collaterally attack the new judgment, he "customarily cannot re-petition after resentencing based on alleged errors affecting the underlying conviction." Id.

Id. at 45. Yet again, from this language it does not follow that a petition is not second or successive simply because it does not violate the old abuse of the writ doctrine. Indeed such a rule would run counter to congressional intent. If a later petition's status pivoted solely on the old abuse of the writ doctrine, then AEDPA's restrictions would lower, rather than raise, the successive petition threshold. "We are cognizant that if we were to perform a 'cause and prejudice'/'actual innocence' analysis of every second or successive petition under § 2255, we would be undermining the clear intent of Congress that stricter standards apply under AEDPA and that the pre-clearance process be streamlined." Barrett, 178 F.3d at 48 n.8. Moreover, "[t]he [AEDPA] requirements themselves take for granted that some newly available claims will be found in 'second or successive' petitions (for instance, 'a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.')" Id. at 45 n.5 (citations omitted). Further, the courts of appeals have routinely treated as second or successive claims alleged to be "new" due to the Supreme Court's changing the law. See, e.g., In re Davenport,

-13-

147 F.3d 605, 610 (7th Cir. 1998) (regarding numerically successive § 2255 petition based upon new Supreme Court decision that changed the law as "second or successive"); Triestman v. United States, 124 F.3d 361, 367-70 (2nd Cir. 1997) (same); In re Dorsainvil, 119 F.3d 245, 247-48 (3rd Cir. 1997) (same).

Sustache's argument may amount to nothing more than an assertion that this petition should be treated as a first petition because he could meet the "cause" requirement, both before and after AEDPA, to excuse a procedural default. See Bousley, 523 U.S. 614, 622 (1998). It is true that the courts' have refused to read the term "second or successive" literally. Additionally, Sustache's position avoids some sense of unfairness, and the Supreme Court has not yet ruled on it. In any event, although we think the argument questionable, we do not decide the issue, but only note that the premise of Sustache's argument -- that he lacked reasonable opportunity to argue that serious bodily injury was an element of the crime -- is itself a difficult question.[9]  More significantly, as we

---

[9]      This "cause" question is complicated, and we need not decide it.  It is primarily complicated by Bousley's stringent requirements. Bousley had filed a first § 2255 petition seeking to benefit from Bailey v. United States, 516 U.S. 137 (1995), a decision that narrowed the definition of "use" in 18 U.S.C. § 924(c)(1)(A), the statute

-14-

explain below, whether Sustache's petition is treated as a first petition or as a second or successive petition makes no difference for other reasons.

B. Does The Petition Satisfy The Requirements for Second or Successive Petitions?

The Jones opinion explained that it rested on statutory, not constitutional, interpretation. See Jones, 526 U.S. at 251 n.11. Accordingly, Sustache's Jones argument would not appear to rest upon "a new rule of constitutional law," and so it would not appear to fit within § 2255's exception for second petitions.

However, the question of whether Sustache's claim fits within § 2255's exception changes complexion with the Supreme

criminalizing use of a firearm in the commission of a federal crime. See Bousley, 523 U.S. at 616-18. The Supreme Court held that Bousley could not show cause for having failed to raise the Bailey claim on direct appeal (before the Supreme Court had decided Bailey) merely because existing circuit precedent at the time would have made it futile to do so. See Bousley, 523 U.S. at 623 (stating that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time") (internal quotation marks and citation omitted). Sustache was not foreclosed by circuit precedent from making the Jones argument at trial or on direct appeal, although he was foreclosed at the time of his first § 2255 petition. It may be that Bousley is distinguishable, though, as Sustache's case presents the additional issue of lack of incentive. Unlike petitioners raising Bailey claims, it is far from clear that Sustache had an incentive to argue at trial or on direct appeal that the evidence of serious bodily injury should have been presented to (as opposed to withheld from) the jury.

Court's recent decision in Apprendi. Apprendi, involving a direct appeal from a state conviction, held that the Constitution requires that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of prior conviction, must be submitted to the jury and proved beyond a reasonable doubt. See Apprendi, 2000 WL 807189 at *13. The Court said that its constitutional holding was foreshadowed by Jones, which construed a federal statute. See Apprendi, 2000 WL 807189 at *7. Significantly for our purposes, the Court also said, referring to the Jones decision:

> We there noted that under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt. The Fourteenth Amendment commands the same answer in this case involving a state statute.

Apprendi, 2000 WL 807189 at *7 (internal quotation marks and citation omitted).[10] Thus, Apprendi now gives Sustache an argument that Jones, while decided as a matter of statutory

---

[10] As is evident from Justice O'Connor's dissent, the meaning and scope of the Jones/Apprendi rule is unclear. See Apprendi, 2000 WL 807189 at *31 (O'Connor, J, dissenting). Because the Apprendi majority referred to the Jones rule as an example of its new constitutional rule, see Apprendi, 2000 WL 807189 at *13, we do the same.

-16-

interpretation, is presently viewed by a majority of the Supreme Court as a constitutionally compelled rule. The next inquiry then, is (1) whether Sustache's petition is "based on a new rule of constitutional law" that (2) has been "made retroactive to cases on collateral review by the Supreme Court" and (3) was "previously unavailable." 28 U.S.C. § 2255; see Pratt 129 F.3d at 57.

In judging whether to permit the filing of a second petition, the court of appeals, as gatekeeper, does not definitively decide these issues. Rather, under Slack, 120 S. Ct. at 1603-04, the precise question is whether "jurists of reason" would find each of these points "debatable." If so, then this court should grant permission to file a second or successive petition. Jurists of reason could find that the Jones claim is, post-Apprendi, "based on a new rule of constitutional law." However, it is clear that the Supreme Court has not made the rule retroactive to cases on collateral review. See In re Vial, 115 F.3d 1192, 1197 (4th Cir. 1997) ("[A] new rule of constitutional law has been 'made retroactive to cases on collateral review by the Supreme Court' within the meaning of § 2255 only when the Supreme Court declares the

-17-

collateral availability of the rule in question, either by explicitly so stating or by applying the rule in a collateral proceeding.") (quoting 28 U.S.C. § 2255). And so, Sustache's claim does not meet the requirements for a second or successive petition.[11]

C. Savings Clause Under § 2255

The question remains whether § 2255's savings clause applies to allow Sustache to pursue a remedy under traditional habeas corpus pursuant to 28 U.S.C. § 2241. The savings clause applies if "the remedy [under § 2255] is inadequate or ineffective to test the legality of [a petitioner's] detention." 28 U.S.C. § 2255. Only then may a § 2241 petition be filed that challenges the legality of a conviction or a sentence. See 28 U.S.C. §§ 2255, 2244(a). Whether the savings clause applies here raises a series of issues.

One procedural issue is whether a petitioner can avoid the gatekeeping function of the courts of appeals by simply

---

[11] The Supreme Court may yet hold that the Jones/Apprendi rule is to be retroactively applied to cases on collateral review. (This likely depends upon whether the Court considers the Jones/Apprendi rule procedural or substantive.) Until that time, any second or successive petition seeking retroactive application of Jones must be considered premature.

refiling a § 2241 petition in the custodial district court. See, e.g., Hernandez v. Campbell, 204 F.3d 861, 866 (9th Cir. 2000) (remanding § 2241 petition where district court had dismissed petition without determining whether the petition fell under the savings clause); Hooker v. Sivley, 187 F.3d 680 (5th Cir. 1999) (noting that the determination whether a petitioner "may proceed under § 2241 . . . can only be made in the district where he is incarcerated"). Congress did not speak to this issue, and there is little caselaw on point.[12] We avoid this

---

[12] The caselaw has come from the courts of appeals in the context of determining when the savings clause should apply, mainly in the wake of Bailey. Troubled by the specter that the restrictions on second or successive petitions would prevent prisoners whose conduct had been rendered non-criminal as a result of Bailey's narrowing the definition of "use" of a firearm in 18 U.S.C. § 924(c)(1), see Bailey, 516 U.S. at 150, four circuits have now established some standards, sparing to be sure, guiding the application of § 2255's savings clause. See Wofford, 177 F.3d at 1242-45; Davenport, 147 F.3d at 610-12; Triestman, 124 F.3d at 373-80; Dorsainvil, 119 F.3d at 248-52.

This court, in a non-Bailey context, briefly commented on the "savings clause" issue in Barrett.

A petition under § 2255 cannot become "inadequate or ineffective," thus permitting the use of § 2241, merely because a petitioner cannot meet the AEDPA "second or successive" requirements. Such a result would make Congress's AEDPA amendment of § 2255 a meaningless gesture. . . .

Such a reading of the savings clause would also recreate the serious structural problems that led Congress to enact § 2255 in the first place. . . .

procedural question because the case has come to us in the customary posture, and Sustache has asked us to decide whether the savings clause authorizes him to proceed.

A second problem concerns the meaning of the savings clause itself. The savings clause has most often been used as a vehicle to present an argument that, under a Supreme Court decision overruling the circuit courts as to the meaning of a statute,[13] a prisoner is not guilty within the new meaning

---

> Yet the § 2255 savings clause, which has been interpreted to avoid constitutional questions about § 2255, must mean something. . . .
>
> We agree with the [Seventh, Third, and Second circuits] that habeas corpus relief [under § 2241] remains available for federal prisoners in limited circumstances.

Barrett, 178 F.3d at 50-52 (citations omitted).

[13] In recent memory the Supreme Court has done this in Gaudin v. United States, 515 U.S. 506 (1995) (holding that materiality is an element of the offense of making false statement to a government agency and must be submitted to the jury); Bailey v. United States, 516 U.S. 137 (1995) (narrowing the definition of "use" of a firearm in 18 U.S.C. § 924(c)(1)); and Jones. As was true of the Supreme Court's decision in Jones, the Supreme Court's decision in Bailey overturned the prevailing view in the circuits regarding the meaning of the term "use" in a federal criminal statute forbidding the "use" or "carrying" of certain firearms. See Bailey, 516 U.S. at 144. As a result, a number of prisoners who had been convicted of "use" of a firearm sought to overturn their convictions. Those who, by happenstance of timing, were able to raise the issue on direct appeal or in a first habeas petition were well positioned to benefit from the decision. But prisoners who, before Bailey, had filed § 2255 petitions raising other claims found

-20-

attributed to the statute.  See, e.g., See Wofford, 177 F.3d at 1242-45; Davenport, 147 F.3d at 610-12; Triestman, 124 F.3d at 373-80; Dorsainvil, 119 F.3d at 248-52.  The savings clause has to be resorted to for such a statutory claim because Congress restricted second or successive petitions to constitutional claims.  If a Jones claim is purely statutory, then an argument under the savings clause may be warranted.  If, post-Apprendi, the Jones claim is a constitutional claim, there is less reason to resort to the savings clause, as Congress permits new constitutional rule claims to be made on second or successive petitions provided that the Supreme Court has made the new rule retroactive (and the claim was not previously available).  If the Supreme Court does not ever make the decision retroactive, the prisoner is no worse off than before.  If the Supreme Court eventually makes the rule retroactive, the prisoner may at that time attempt a claim by second or successive § 2255 petition.[14]

themselves in quandaries similar to that faced by Sustache.

[14]    This raises the prospect of whether the savings clause might still play a role in permitting a prisoner to bring an earlier petition where the Supreme Court has not yet made a decision retroactive to cases on collateral review but Supreme Court precedent strongly suggests that it will.  There would then be an argument of unfairness in continuing to imprison the petitioner until the day the Supreme

Whether the Jones claim is constitutional or statutory is not a question we need to resolve; nor do we need to resolve the meaning of the savings clause, as Sustache's claim fails under a related doctrine, described below.

The last problem here arises from the fact that Sustache failed to make the Jones argument earlier. Consequently, whether Sustache's petition is properly treated as falling under § 2255 or under § 2241, he must show cause and prejudice for his failure to have previously made the claim. We know from Bousley that a first § 2255 petition must meet the cause and prejudice standard if it presents a claim not made earlier. See Bousley, 523 U.S. at 622. In Brache v. United States, 165 F.3d 99, 102 (1999), this court declined to limit Bousley to petitions attacking guilty pleas and applied Bousley to an attack on a conviction after trial. We also know that the cause and prejudice standard applies equally to habeas actions brought under § 2241 and § 2255. See e.g., Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3rd Cir. 1996); George v. Perrill, 62 F.3d 333, 335 (10th Cir. 1995). It would be

Court makes the decision retroactive. We need not address the problem here.

anomalous if procedurally defaulted claims falling within the savings clause of § 2255 did not also have to meet a "cause and prejudice" standard. It would also be contrary to the legislative history of § 2255, well laid out in <u>Wofford</u>, 177 F.3d at 1239 ("There was no intent to make the § 2255 remedy any different in scope from the habeas remedy that had previously been available . . . .").

D. <u>Cause and Prejudice</u>

The government argues that while it may seem unfair to deny Sustache a chance to present his claim through some form of post-conviction petition, it does not matter because he does not present even a plausible claim of cause and prejudice. In response, Sustache argues that he has suffered prejudice in that a judge, not a jury, decided the serious bodily injury issue.

In the end, the government is correct that Sustache has suffered no cognizable prejudice. The jury heard testimony that the victims were shot at multiple times during the course of the carjacking and that both had been hit, one victim in the abdomen. The testimony was undisputed. Further, the pre-sentence report explained that a gunshot to the leg resulted in amputation below the knee.

Against this factual background, we ask by what standard the question of prejudice is to be decided. The first question we consider is whether the error of not submitting the issue of serious bodily injury to the jury constituted "structural error." If it did constitute structural error, there would be per se prejudice, and harmless error analysis, in whatever form, would not apply. But we think Supreme Court precedent makes it clear that the error at Sustache's trial was not structural error.[15]

In Neder v. United States, 527 U.S. 1 (1999), the Court held that the omission of an element of a criminal offense from a jury instruction is not structural error and is, therefore, subject to harmless error analysis. Neder involved the failure to submit the element of materiality to the jury in a tax fraud prosecution. Following Neder, this court, in United States v. Perez-Montanez, 202 F.3d 434 (1st Cir. 2000), held that a Jones error, as claimed here, is not in the "special category of forfeited errors that can be corrected regardless of their

---

[15] The court in Apprendi merely remanded the case for further proceeding not inconsistent with the opinion. See Apprendi, 2000 WL 807189, at *17. It shed no light on the standards to use to evaluate the effect of any error.

-24-

effect on the outcome," id. at 442 n.3, as structural errors were described by the Supreme Court in United States v. Olano, 507 U.S. 725, 734 (1993).  Accordingly, in Perez-Montanez, a case applying Jones on direct appeal where the Jones argument had not been made at trial, we applied plain error analysis and rejected the defendant's claim that he was entitled to re-sentencing.[16]  See Perez-Montanez, 202 F.3d at 441-43.  A recent decision from the Sixth Circuit appears to agree that harmless error analysis may be appropriate where the question of serious bodily injury under 18 U.S.C. § 2119(2) was not submitted to the jury.  In United States v. Jackson, No. 98-4205, 2000 WL 665395 (6th Cir. May 23, 2000), the court vacated a § 2119(2) sentence and remanded for re-sentencing according to the sentencing provisions of § 2119(1), but it noted that it was compelled to

_____

[16]    We are aware of two other courts that, arguably, take a different view; but one case was decided before Neder, and the other did not discuss it.  In United States v. Matthews, 178 F.3d 295, 301 (5th Cir. 1999), a decision issued just days before Neder, the court vacated a § 2119(2) sentence and remanded for re-sentencing under § 2119(1).  The Fourth Circuit has done the same in a case decided after Neder.  See United States v. Rudisill, No. 99-4588, 2000 WL 620314, at *1 (4th Cir. May 15, 2000) (unpublished). Rudisill did not discuss Neder.   Both cases involved convictions in which the indictments -- unlike the indictments in Perez-Montanez, 202 F.3d at 441, and in Sustache's case -- had not specifically charged the defendants under § 2119's subsections for carjackings resulting in serious bodily injury or death.  See Rudisill, 2000 WL 620314, at *1; Matthews, 178 F.3d at 301.

do so "[i]n the absence of any constitutional harmless error analysis offered by the government." Id. at *1. Because "[g]overnment counsel did not seek to advance a constitutional harmless error analysis, even after [the court] asked about it at oral argument," the court did not address the issue of harmless error. Id. at *3.

Hence, harmless error analysis applies to the question of prejudice in this case. Because this case is on collateral review -- as opposed to direct review -- we apply the "actual prejudice" harmless error test described in Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). See Singleton v. United States, 26 F.3d 233, 236-37 & n.9 (1st Cir. 1994). Accordingly, we ask whether the government can show that the error did not have "substantial and injurious effect or influence." Brecht, 507 U.S. at 637 (internal quotation marks and citation omitted); Singleton, 26 F.3d at 236. Under this test, trial error is deemed harmless "if it is highly probable that the challenged action did not affect the judgment." Singleton, 26 F.3d at 237 (internal quotation marks and citation omitted).

On the evidence presented, there is no plausible theory that the failure to submit the question of serious bodily injury

to the jury had substantial and injurious effect, or that Sustache did not receive a fair trial on this point.

The carjacking statute initially adopted the definition of "serious bodily injury" in 18 U.S.C. § 1365 (which criminalizes tampering with consumer products).[17] As defined in § 1365, serious bodily injury means, inter alia, bodily injury involving "substantial risk of death" or "extreme physical pain." In this case, as in Perez-Montanez,[18] "it is as a practical matter inconceivable that [the] jury would have hesitated to find the omitted element beyond a reasonable doubt -- that [serious bodily injury] resulted from the carjacking." Perez-Montanez, 202 F.3d at 442; cf. United States v. Johnson-Dix, 54 F.3d 1295, 1312-13 (7th Cir. 1995) (gunshot wound resulting in broken leg and two-day hospital stay was "serious bodily injury" under U.S.S.G. § 1.1B, App. Note 1(j) -- which includes, inter alia, injury "involving extreme physical pain"

---

[17]    The definition of serious bodily injury in the carjacking statute was later amended in respects not relevant to this opinion. See Carjacking Correction Act, Pub. Law 104-217, § 2, 110 Stat. 3020 (1996); United States v. Vazquez-Rivera, 135 F.3d 172,174-75 (1st Cir. 1998).

[18]    In Perez-Montanez, there was uncontroverted testimony regarding the death of the victim of the crime. See Perez-Montanez, 202 F.3d at 443.

or "requiring medical intervention"); <u>United States</u> v. <u>Moore</u>, 997 F.2d 30, 37 (5th Cir. 1993) (involving same Guidelines definition and affirming district court's finding that gunshot wound to leg that resulted in two-hour emergency room visit was serious bodily injury); <u>United States</u> v. <u>Fitzgerald</u>, 882 F.2d 397, 398 (9th Cir. 1989) ("'serious bodily injury' clearly encompasses" gunshot wound to the neck as well as gunshot wounds to chin and forearm); <u>United States</u> v. <u>Cooper</u>, 812 F.2d 1283, 1288 (10th Cir. 1987) (noting, with regard to a criminal statute that did not define serious bodily injury, that it was "beyond dispute" that gunshot wound to the chest that resulted in lengthy hospital stay was serious bodily injury) (Baldock, J., concurring); <u>United States</u> v. <u>Jacobs</u>, 632 F.2d 695, 696-97 (7th Cir. 1980) (involving same statute and affirming conviction for assault resulting in serious bodily injury where victim was shot in the arm).

Sustache has not made a claim of actual innocence; nor could he do so.[19]

**III.**

---

[19] Although Sustache argues that he should be able to proceed by writ of coram nobis or audita querela, these arguments are weaker than his savings clause argument. <u>See</u> <u>Barrett</u>, 178 F.3d at 54-57.

For these reasons we deny the certificate of appealability under § 2255, conclude that whether or not the savings clause of § 2255 applies, there is no prejudice, and dismiss the case. So ordered.