Elmo TURNER, Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

No. CIV. 00–74796.
No. CRIM. 93–CR–80981.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 7, 2001.

Elmo Turner, Milan, MI, pro se.

Krishna Dighe, AUSA, Detroit, MI, for respondent.

*OPINION AND ORDER TRANSFERRING SECOND § 2255 MOTION TO COURT OF APPEALS FOR CERTIFICATION DETERMINATION*

ROSEN, District Judge.

## I. *INTRODUCTION*

By motion filed on October 31, 2000, Petitioner Elmo Turner seeks relief under 28 U.S.C. § 2255, arguing that his 168–month term of imprisonment imposed by this Court on March 16, 1995 runs afoul in various respects of the Supreme Court's recent decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In particular, Petitioner argues (i) that his indictment was jurisdictionally defective for lack of specific drug quantities in Counts One through Four, in which he was charged with conspiracy to distribute cocaine, cocaine base, and heroin in violation of 21 U.S.C. §§ 846 and 841(a)(1), and with possession with intent

to distribute each of these controlled substances in violation of § 841(a)(1); (ii) that his plea of guilty was not knowing and voluntary, because neither the Court nor his counsel advised him that drug quantity is an element of each of the drug offenses charged in the indictment; and (iii) that his counsel performed deficiently by incorrectly advising him that he faced a sentencing range of 10 years to life imprisonment if he elected to proceed to trial on the drug charges, when in fact the proper range, in Petitioner's view, should have been 5 to 40 years.[1]

Having reviewed Petitioner's motion and the record as a whole, the Court now is prepared to rule in this matter. As explained below, the Court finds that Petitioner must obtain the permission of the Sixth Circuit Court of Appeals before he may pursue his present challenge to his sentence. Alternatively, even if the Court were to reach the merits of Petitioner's motion, he has not identified any basis for relief under *Apprendi*.

## II. *FACTUAL AND PROCEDURAL BACKGROUND*

Petitioner Elmo Turner was named in nine counts of a thirteen-count indictment issued on September 30, 1993. Specifically, Petitioner was charged with conspiracy to distribute cocaine, cocaine base, and heroin (Count One), possession with intent to distribute each of these controlled substances (Counts Two through Four), and five firearm offenses (Counts Five through Eight and Count Thirteen). None of the four drug-related counts of the indictment identifies any specific quantity of drugs involved in the charged offense.

On August 16, 1994, Petitioner pled guilty to Counts One and Two of the indictment, the drug conspiracy and cocaine base offenses. Petitioner's Rule 11 Plea Agreement included the following provisions:

2. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney. Defendant understands that the maximum penalties that may be imposed for the crimes of conspiracy to distribute controlled substances and possession of controlled substances with the intent to distribute are life imprisonment and/or a fine of $4,000,000 . . . .

\*　　\*　　\*　　\*　　\*　　\*

4. Defendant will enter a plea of guilty to the crime of conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846, as charged in count one of the indictment, and to the crime of possession of a controlled substance, namely cocaine base, with the intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1), as charged in count two of the indictment.

5. Defendant will plead guilty to the crimes of conspiracy to distribute controlled substances and possession of a controlled substance, namely cocaine base, with the intent to distribute because he is in fact guilty of these crimes. Defendant also agrees that the following are the facts in this case, although he acknowledges that as to other facts the parties may disagree:

Beginning no later than on or about September 12, 1993, and continuing to on or about September 22, 1993, de-

---

**1.** Apart from these *Apprendi*-based challenges, Petitioner also contends that his counsel incorrectly advised him as to the law regarding multiple-object conspiracies. Given the pro-

cedural defects in Petitioner's motion as outlined below, the Court need not address this issue.

fendant ELMO TURNER conspired with [others] to distribute controlled substances, namely cocaine base and heroin. During and in furtherance of this conspiracy, on or about September 22, 1993, at a residence located at 19438 Stahelin in the City of Detroit, defendant ELMO TURNER possessed approximately 767 grams of cocaine base for the purpose of distribution.

6. . . . .

a. The parties agree as to several of the factors and adjustments to be applied in calculating the appropriate sentence range under the sentencing guidelines .... Specifically, the parties [agree] as to the following factors and adjustments:

1. *Base offense level.* The parties agree that the base offense level is 36, as per USSG § 2D1.1(a)(3).

\* \* \* \* \* \*

d. The parties acknowledge that the Court will determine the applicable sentencing factors at sentencing and that the Court's determination will affect the sentence range under the sentencing guidelines. The parties agree that all sentencing guideline provisions that would affect defendant's guideline range have been identified in this agreement, and that the parties will raise no others . . . .

7. Pursuant to Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure, the parties agree that any term of imprisonment imposed in this case shall not exceed 168 months . . . .

\* \* \* \* \* \*

18. In consideration of defendant's guilty pleas as set forth in paragraph 4 of this agreement, the Government will move to dismiss counts three, four, five, six, seven, eight, and thirteen of the indictment at the time of sentencing. (Rule 11 Plea Agreement at 2–10.)

Following Petitioner's guilty pleas, U.S. Probation Officer Michelle Bradley prepared a Presentence Investigation Report ("PSIR"). The PSIR stated at the outset that Counts One and Two carried prison terms of 10 years to life, and further stated, in relevant part:

12. . . . [O]n September 22, 1993, Wayne County Sheriff's, with the assistance of a special agent of the Bureau of Alcohol, Tobacco, and Firearms, as part of the continuing investigation in this case, obtained a search warrant and executed it at 19438 Stahelin, the residence of ELMO TURNER and [a co-defendant]. The officers knocked on the door and announced their presence. After no response was received, a forced entry was made. Upon entry, officers observed ELMO TURNER standing over the kitchen stove where cocaine was being cooked into crack cocaine in a Pyrex beaker atop an active gas burner on the stove. TURNER ran and was quickly detained on the stairway leading to the side door and the basement of the residence. Found on top of the refrigerator was a loaded 9mm Budapest semi-automatic weapon . . . .

13. According to the ATF agent and supported by a laboratory report, seized from the residence was: 13.78 grams of heroin; 767.01 grams of cocaine base; and 176.85 grams of cocaine, all of which each defendant is held responsible for purposes of calculating the applicable guideline ranges. The drug amounts were converted into the marijuana equivalent of 15,389.38 kilograms.

\* \* \* \* \* \*

23. Base Offense Level: The guideline for a violation of 21:USC:841 and 846 is located in section 2D1.1(a)(3).

The defendant is being held responsible for 13.78 grams of heroin; 767.01 grams of cocaine base; and 176.85 grams of cocaine. For purposes of calculating the guideline range, the drug amounts were converted into marijuana, which is equivalent to 15,389.38 kilograms. Pursuant to 2D1.1(c)(4), at least 10,000 kilograms but less than 30,000 kilograms of marijuana has a base offense level of 36

. . . .

\* \* \* \* \* \*

59. Counts 1 and 2: The minimum term of imprisonment for these offenses is 10 years [and] the maximum is life on each count. 21 U.S.C. § 841(b)(1)(A).

60. Based on a total offense level of 35 and a Criminal History Category of I, the guideline imprisonment range is 168 to 210 months.

61. The plea agreement limits any sentence of incarceration to a maximum of 168 months which is the bottom of the applicable guideline range as calculated by the Probation Department . . . .

(PSIR at 6–13.) Petitioner and his counsel submitted only one written objection to the initial version of the PSIR, concerning a two-point offense-level increase for probationary status at the time of the charged offenses,[2] and otherwise advanced no objections.

At a hearing held on March 16, 1995, the Court accepted the parties' Rule 11 plea agreement and the recommendations set forth in the PSIR, and sentenced Petitioner to a 168–month term of imprisonment on each of the two counts to which Petitioner had pled guilty, with these sentences to run concurrently. Petitioner raised only one objection at sentencing,

regarding a two-level enhancement for the possession of a dangerous weapon in connection with a drug offense.[3] No challenge was made to the drug types and quantities specified in the plea agreement and the PSIR. Nor did Petitioner question the sufficiency of the indictment, the authority of the Court to determine drug quantities at sentencing, or the standard of proof under which such a determination should be made.

After Petitioner's *pro se* appeal of his sentence was dismissed for lack of prosecution, Petitioner filed a § 2255 motion on June 25, 1996, claiming that he received ineffective assistance of trial counsel when his attorney (i) failed to challenge the constitutionality of the crack-versus-powder cocaine 100–to–1 sentencing disparity found in the Sentencing Guidelines, and (ii) failed to pursue an appeal on his behalf despite a request to do so. In separate Opinions and Orders issued on March 21 and April 30, 1997, the Court rejected the first of these contentions, but accepted the second. *See Turner v. United States,* 961 F.Supp. 189 (E.D.Mich.1997). Accordingly, as relief for the deficient performance of Petitioner's trial counsel, the Court granted Petitioner a renewed 30–day period in which to file a notice of appeal.

Petitioner took advantage of this renewed opportunity, and the Sixth Circuit consolidated this "direct" appeal with Petitioner's separate appeal of this Court's partial denial of his § 2255 motion. In an unpublished decision, the Sixth Circuit held that there was no clear error in the calculation of Petitioner's sentence by reference to the guidelines for crack cocaine, and that Petitioner had evinced a sufficient

---

**2.** This objection was accepted, and Petitioner's offense level was adjusted accordingly.

**3.** This same point of contention was identified in the plea agreement as the sole sentencing

guideline issue upon which the parties disagreed. At the sentencing hearing, the Court overruled this objection and allowed the enhancement.

understanding of the drug conspiracy charge during the plea colloquy to sustain his guilty plea for this offense. *See United States v. Turner,* 173 F.3d 431, 1999 WL 97005 (6th Cir. Feb.1, 1999).[4]

The Supreme Court denied certiorari on October 4, 1999. *See Turner v. United States,* 528 U.S. 854, 120 S.Ct. 135, 145 L.Ed.2d 115 (1999). Just over a year later, on October 16, 2000, Petitioner mailed his present § 2255 motion to the Court, and this motion was received and filed on October 31, 2000. Petitioner also submitted a supplemental brief in support of his motion on June 28, 2001.

### III. *ANALYSIS*

#### A. Petitioner's Present Motion Is His Second Filed Under § 2255.

■ Before the Court may consider the merits of Petitioner's motion, it first must address a number of apparent procedural defects in this submission. Most importantly, the Court finds that Petitioner is pursuing a second attempt at relief under 28 U.S.C. § 2255. It follows, under the plain language of that statute, that he first must obtain the permission of the Court of Appeals to mount a second collateral attack upon his sentence.

As amended through the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), § 2255 distinguishes between initial and "second or successive" challenges to the lawfulness of a sentence. As discussed below, initial motions are governed by a one-year period of limitation, but otherwise are not restricted as to their

grounds—provided, of course, that they advance a basis for relief that lies within the general ambit of the statute. *See* 28 U.S.C. § 2255 para. 6. In contrast, a "second or successive motion must be certified ... by a panel of the appropriate court of appeals" to rest upon either "newly discovered evidence" or "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255 para. 8.

Petitioner acknowledges this distinction, but contends that the present motion should be treated as his first under § 2255, because it is the first such motion he has filed *after* exhausting all avenues of "direct" appeal. In other words, while Petitioner concedes that his present motion is, as a literal matter, his second under § 2255, he argues that the relief granted as a result of his prior motion effectively wiped the slate clean by reinstating his opportunity for direct review of his sentence, thereby obviating the purpose of any prior collateral challenge.

■ Yet, there are only a few circumstances in which a literally "second" petition under § 2255 may nevertheless be treated as a "first," and Petitioner has not shown that such circumstances are present here. Specifically, the courts have discounted an initial filing where (1) it is dismissed as premature, or for failure to exhaust another available avenue of relief, or (2) the petition is otherwise terminated without a judgment on its merits. *See Sustache–Rivera v. United States,* 221 F.3d 8, 12–13 (1st Cir.2000).[5] Under these

---

**4.** The Court of Appeals also ruled against Petitioner on three other issues unrelated to the present matter.

**5.** A second motion might also be counted as the "first" where it "attacks a different criminal judgment, such as where a prisoner who has successfully brought a first habeas claim

is retried, reconvicted, and resentenced and then attacks the new judgment." *Sustache–Rivera,* 221 F.3d at 13. This exception plainly does not apply here.

limited circumstances, the second, "nominally successive" motion is treated as merely an extension of the original petition that was not addressed on its merits. 221 F.3d at 13.

No such claim can be made here. Rather, this Court fully addressed the merits of Petitioner's previous § 2255 motion. Indeed, this motion raised two separate and independent claims of ineffective assistance of counsel, and the Court accepted one and rejected the other, both on their merits. Thus, even if the successful portion of Petitioner's initial motion were deemed not to "count" as a first submission under § 2255, by virtue of the nature of the relief granted, the same could not be said for the remainder of this motion, which was a wholly conventional collateral attack upon Petitioner's sentence, and was treated as such in the Court's disposition of this distinct claim. The initial motion, then, demonstrated Petitioner's awareness of the opportunity, · as well as the obligation, to assert any and all challenges to the legality of his sentence.

■ Even as to the successful claim raised in Petitioner's prior motion, the Court cannot conclude that this success,

and the resulting remedy of a renewed opportunity for direct appeal, should altogether remove this previous submission from consideration as an "initial" motion under § 2255. The relief granted to Petitioner merely deferred the date upon which his judgment of conviction became final. This does not in any way negate the fact that a § 2255 motion was the vehicle for this award of relief.[6] In short, the Court finds that Petitioner's prior motion counts as his first post-AEDPA "bite at the apple."

It follows that his present, second motion requires certification from the Court of Appeals to go forward. Under these circumstances, the Sixth Circuit has instructed that a District Court should transfer the matter to the Court of Appeals for its determination whether to authorize a second or successive petition. *See In re Sims,* 111 F.3d 45, 47 (6th Cir. 1997). Accordingly, the Court will do so.[7]

## B. Even Viewed as a First Motion, Petitioner's Present Submission Is Untimely.

■ Alternatively, even if the Court were to construe Petitioner's present mo-

---

**6.** To be sure, if Petitioner had succeeded in overturning his sentence on appeal, his § 2255 "counter" might well have been reset to zero, and he might have been entitled to mount an "initial" collateral attack upon any new judgment entered at resentencing. However, as noted earlier, Petitioner's appeal was not successful, either as to its "direct" challenges, or as to its challenge of this Court's adverse ruling on the other portion of Petitioner's prior § 2255 motion.

**7.** The Court notes that this authorization likely will not be forthcoming. Regarding Petitioner's "multiple-object conspiracy" argument, he has not identified any "newly discovered evidence" or "new rule of constitutional law" that might sustain a second petition under § 2255. *See* 28 U.S.C. § 2255 para. 8. The remainder of Petitioner's motion

rests upon the authority of *Apprendi,* which, for present purposes, the Court assumes to have announced a "new rule of constitutional law." Even so, the Supreme Court recently stated that such a new rule is not "made retroactive to cases on collateral review"—a necessary prerequisite for a new rule to support a second motion, *see* 28 U.S.C. § 2255 para. 8(2)—"unless the Supreme Court holds it to be retroactive." *Tyler v. Cain,* 533 U.S. 656, 121 S.Ct. 2478, 2482, 150 L.Ed.2d 632 (2001). Following *Tyler,* the Sixth Circuit has found that the decision in *Apprendi* does not warrant the certification of a second or successive motion under § 2255, "[a]s the Supreme Court has not held that *Apprendi* applies retroactively to cases on collateral review." *In re Clemmons,* 259 F.3d 489, 493 (6th Cir.2001).

tion as his first brought under § 2255, he still would confront a number of procedural obstacles to the consideration of his claims on the merits. First, as noted earlier, AEDPA has imposed a one-year period of limitation upon initial § 2255 motions, with this period beginning to run on the latest of four possible dates set forth in the statute. *See* 28 U.S.C. § 2255 para. 6.[8] One such possibility for the commencement of the one-year period is "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255 para. 6(1). Although Petitioner asserts that the present motion was filed within this particular one-year period, the Court finds otherwise.

As stated earlier, Petitioner's renewed avenue of direct appeal came to an end when the Supreme Court denied certiorari on October 4, 1999.[9] The Sixth Circuit has held that "a conviction becomes final at the conclusion of direct review." *Johnson v. United States*, 246 F.3d 655, 657 (6th Cir. 2001). Further, "[a]s a general rule, direct review for a federal prisoner who files a petition for certiorari with the Supreme Court concludes when the Court either denies the petition or decides the case on the merits." *Johnson*, 246 F.3d at 657. Here, the Supreme Court did the former,

denying the petition on October 4, 1999. Consequently, in order to comply with the first of the four one-year periods of limitation set forth in § 2255, Petitioner should have submitted his motion by October 4, 2000.

Instead, Petitioner mailed his present motion on October 16, 2000, almost two weeks after the one-year period of limitation had expired. He has not advanced any reason why the Court should overlook the untimeliness of this submission. Accordingly, because Petitioner has not satisfied the one-year period of limitation set forth in § 2255 para. 6(1), he must look to a different provision to sustain his present motion.

**C. Even If *Apprendi* Is Retroactively Applicable to Cases on Collateral Review, Petitioner Has Not Established His Entitlement to Relief.**

The sole remaining argument available to Petitioner—assuming, of course, that his motion is viewed as his first under § 2255, a position the Court already has rejected—is that his motion was filed within one year after "the date on which the right asserted was initially recognized by

---

8. Specifically, the relevant portion of the statute provides:

A 1–year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255 para. 6. Subsections (2) and (4) of this paragraph are wholly inapplicable here. The Court, therefore, addresses only subsections (1) and (3).

9. Although Petitioner states in his motion that certiorari was denied on October 18, 1999, nothing in the record supports this later date. Perhaps this is the date upon which Petitioner received notification of the Supreme Court's determination. However, there is no question that this decision was rendered on October 4, 1999. *See Turner v. United States*, 528 U.S. 854, 120 S.Ct. 135, 145 L.Ed.2d 115 (1999).

the Supreme Court." 28 U.S.C. § 2255 para. 6(3). *Apprendi* was decided on June 26, 2000, and Petitioner filed his motion within four months of this date. Even so, the statute further requires that the asserted right must have been "newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255 para. 6(3). The Court assumes, for present purposes, that *Apprendi* "newly recognized" a particular aspect of the Sixth Amendment right to a trial by jury that had not been identified in prior Supreme Court decisions.[10]

This leaves "only" the question whether the right recognized in *Apprendi* has been "made retroactively applicable to cases on collateral review." Upon turning to this issue, the Court is quickly confronted by a thicket of subissues and conflicting rulings. Initially, the post-AEDPA statute does not clarify whether it is solely the province of the Supreme Court to "ma[k]e" a newly recognized right "retroactively applicable to cases on collateral review." If so, it is clear that the Supreme Court has not yet acted to make the ruling in *Apprendi* retroactively available for collateral challenges. *See In re Clemmons, supra,* 259 F.3d at 493. Some courts, on the other hand, have seized upon slightly different phrasing in different portions of § 2255,[11] and have concluded that the lower courts are empowered to make the "retroactive

application" determination in the first instance, under the standards articulated in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *See, e.g., Jackson v. United States,* 129 F.Supp.2d 1053, 1057–59 (E.D.Mich.2000) (Gadola, J.); *United States v. Pinkston,* 153 F.Supp.2d 557, 560 & n. 3 (M.D.Pa.2001); *see also United States v. Sanders,* 247 F.3d 139, 146 n. 4 (4th Cir.2001) ("assum[ing], without deciding, that a circuit court can declare a new rule retroactive on collateral review in an initial § 2255 petition"); *Rodgers v. United States,* 229 F.3d 704, 705–06 (8th Cir.2000).

Even among the lower courts that have found it appropriate to conduct a *Teague* analysis, no clear consensus has emerged as to the retroactive application of *Apprendi* to collateral attacks under § 2255. *Compare, e.g., United States v. Goode,* 143 F. Supp.2d 817, 823–26 (E.D.Mich.2001) (Duggan, J.); *McCoy v. United States,* 266 F.3d 1245, 1256–58 (11th Cir.2001); *Sanders,* 247 F.3d at 146–51 (finding that *Apprendi* does not apply retroactively on collateral review) *with, e.g., Jackson,* 129 F.Supp.2d at 1068–69; *United States v. Hernandez,* 137 F.Supp.2d 919, 927–32 (N.D.Ohio 2001) (holding that *Apprendi* does apply retroactively to initial § 2255 petitions). More to the point, the Sixth Circuit has not yet expressed a view on

**10.** Of course, this does not save Petitioner's "multiple object conspiracy" argument from the one-year statute-of-limitations bar, because it does not rest upon any right which was "newly recognized by the Supreme Court," whether in *Apprendi* or elsewhere.

**11.** Specifically, the portion of the statute addressing "second or successive" motions calls for a determination whether a new rule of constitutional law has been "made retroactive to cases on collateral review by the Supreme Court." 28 U.S.C. § 2255 para. 8(2). It is this language—or, more accurately, the identical language found in 28 U.S.C.

§ 2244(b)(2)(A)—that the Supreme Court construed in *Tyler, supra.* The Court confirmed that "under this provision, the Supreme Court is the only entity that can 'ma[k]e' a new rule retroactive." *Tyler,* 121 S.Ct. at 2482. In contrast, the portion of the statute setting forth the one-year period of limitation for initial motions speaks of rights which are "newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255 para. 6(3). This latter provision, unlike the former, does not specify which courts can "ma[k]e" a new rule retroactive.

this issue, and the decisions in this District to date have reached opposing conclusions. *See Burton v. United States*, 154 F.Supp.2d 1080, 1082–83 (E.D.Mich.2001) (Cook, J.) (noting this split, and declining to "step into this legal morass"). This Court, like the Court in *Burton*, deems it unnecessary to enter into the fray, and instead will make the several assumptions—for present purposes only—that are necessary to reach the merits of Petitioner's *Apprendi*-related claims. Upon doing so, the Court finds, for many of the same reasons outlined in *Burton*, that *Apprendi* does not assist Petitioner in his effort to overturn his sentence.

■ As his first *Apprendi*-based claim, Petitioner argues that his indictment was jurisdictionally defective for lack of reference to drug quantities in Counts One through Four, charging drug conspiracy and possession offenses under 21 U.S.C. §§ 841 and 846. Petitioner points to language in certain Sixth Circuit decisions suggesting that, in light of *Apprendi*, an indictment charging a violation of 21 U.S.C. § 841 must include the quantity of drugs for which the Government seeks to hold the defendant responsible. *See, e.g., United States v. Strayhorn*, 250 F.3d 462, 467–68 (6th Cir.2001). *But see United States v. Stafford*, 258 F.3d 465, 477 (observing, in a decision subsequent to *Strayhorn*, that "[w]e have yet to squarely address this issue, and we need not do so here"). The indictment in this case, by contrast, speaks only of "detectable amounts" of cocaine, cocaine base, and heroin, with no further elaboration as to precise amount or ranges of quantities.

Initially, the Court notes the facial implausibility of the contention that *Apprendi* announced any sort of new rule concerning the necessary content of an indictment, where the *Apprendi* Court expressly declined to "address the indict-

ment question." *Apprendi*, 120 S.Ct. at 2355–56 n. 3. Thus, it appears doubtful that *Apprendi* could assist Petitioner in his effort to identify a "newly recognized" right that would support his otherwise-untimely challenge to the indictment.

In any event, this Court very recently rejected the exact proposition advanced by Petitioner here—namely, that the omission from an indictment of a purported element of a drug offense, such as drug quantity, rises to the level of a jurisdictional defect. *See United States v. Kirksey*, 174 F.Supp.2d 611 (E.D.Mich.2001). Moreover, as observed in *Kirksey*, several Courts of Appeals have declined to treat *Apprendi* violations as jurisdictional in nature. *See, e.g., United States v. Bjorkman*, 270 F.3d 482, 489–91 (7th Cir.2001); *McCoy*, 266 F.3d at 1248–54; *see generally United States v. Prentiss*, 256 F.3d 971, 981 (10th Cir.2001) (*en banc*) ("[T]he failure of an indictment to allege an essential element of a crime does *not* deprive a district court of subject matter jurisdiction."). Indeed, the Sixth Circuit recently rejected a similar jurisdictional challenge to an indictment, albeit in an unpublished opinion. *See United States v. Pinkley*, 2001 WL 1355297, at *2 (6th Cir. Oct.26, 2001). Accordingly, the Court finds no merit in Petitioner's claim of a jurisdictional defect in the indictment in this case.

■ As his next two *Apprendi*-based claims, Petitioner contends (i) that his plea was not knowing and voluntary, where he was not advised that drug quantity was an element of the drug offenses to which he pled guilty, and (ii) that his counsel provided ineffective assistance by allegedly misinforming him that he faced a sentencing range of ten years to life imprisonment if he elected to go to trial on the charges against him. As a threshold matter, Petitioner's failure to raise these or any other sort of *Apprendi*-related challenge at sen-

tencing or on direct appeal operates as a waiver of these claims on collateral review, unless Petitioner can show cause for this failure and actual prejudice he has suffered as a result of the alleged error. *See Murr v. United States,* 200 F.3d 895, 900 (6th Cir.2000); *Burton,* 154 F.Supp.2d at 1083. The Court assumes, *arguendo,* that the intervening *Apprendi* decision and Petitioner's allegation of ineffective assistance of counsel suffice to satisfy the "cause" prong of this standard. See *Burton,* 154 F.Supp.2d at 1083 n. 4 (making these same assumptions). Nevertheless, Petitioner has suffered no actual prejudice—and, in fact, has failed to identify an *Apprendi* violation in the first instance.

Regarding Petitioner's challenge to his guilty plea, the Court finds that the plea itself and its surrounding circumstances overcome any *Apprendi* concerns about the proper standard of proof to be applied in determining drug quantities. As recited earlier, the Rule 11 plea agreement included stipulations that Petitioner was discovered in possession of approximately 767 grams of cocaine base for the purpose of distribution, and that this possession was during and in furtherance of a conspiracy to distribute cocaine base and heroin. The plea agreement also provided that the base offense level for Petitioner's offenses was 36, a level entirely consistent with the drug amount set forth elsewhere in the agreement. Similarly, the PSIR calculated the same base offense level of 36, based on the premise that Petitioner's offenses involved 767 grams of cocaine base (as well as 13.78 grams of heroin and 176.85 grams of cocaine), and Petitioner raised no objections to these aspects of the presentence report. These stipulations and unchallenged factual assertions as to drug quantity "obviate any possible concerns about the proper standard of proof" that might otherwise arise from the decision in *Apprendi. Stafford,* 258 F.3d at 476; *see also United States v. Harper,* 246 F.3d 520, 530–31 (6th Cir.2001) (finding that "the principles articulated in *Apprendi* are not implicated" where the defendant "stipulated to the amount of drugs for which he was held responsible, and the district court did not rely on any fact outside of the plea agreement to determine drug quantity at sentencing"); *Burton,* 154 F.Supp.2d at 1083–84.

Moreover, these same factual stipulations and unchallenged statements in the PSIR render the advice of Petitioner's counsel not the least bit deficient, but rather entirely correct. Considering only the 767 grams of cocaine base alone, and discounting the heroin and cocaine powder, Petitioner faced a sentence ranging from 10 years to life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (establishing this sentencing range for offenses involving 50 grams or more of cocaine base).[12] Apart from any advice of counsel, Petitioner also was expressly informed in the plea agreement and the PSIR that he faced a statutory maximum sentence of life imprisonment, and the PSIR explicitly cited the penalty provision at 21 U.S.C. § 841(b)(1)(A) as establishing a sentencing range of 10 years to life imprisonment.

Indeed, even in his present motion, Petitioner appears to concede that he was properly held responsible for an amount of cocaine base sufficient to trigger the 10–years–to–life sentencing range set forth in

---

**12.** Although, as discussed in *Stafford,* 258 F.3d at 470–71, the Sentencing Guidelines distinguish between "crack" and other forms of "cocaine base," any such distinction is of no moment here, where this issue already was decided adversely to Petitioner in his direct appeal. *See United States v. Turner,* 173 F.3d 431, 1999 WL 97005, at \*2 (6th Cir. Feb.1, 1999).

§ 841(b)(1)(A). In arguing that his attorney's advice on this point was erroneous, Petitioner appears to misread the penalty provisions of § 841(b)(1)(A) and (B), contending that amounts of cocaine base in excess of 500 grams should result in a sentencing range of 5 to 40 years under § 841(b)(1)(B). (*See* Petitioner's Motion, Memorandum in Support at 11–12.) In fact, amounts of cocaine *powder* in excess of 500 grams lead to a sentencing range of 5 to 40 years, while an equivalent amount of cocaine *base* easily exceeds the 50–gram quantity necessary to trigger an elevated 10–years–to–life sentencing range. *Compare* 21 U.S.C. § 841(b)(1)(B)(ii) (specifying the penalty for 500 grams or more of cocaine) *with* 21 U.S.C. § 841(b)(1)(A)(iii) (establishing the penalty for 50 grams or more of cocaine base). Thus, the Court cannot accept Petitioner's contention that his plea was uninformed.

■ Finally, even if Petitioner were able to identify some sort of *Apprendi*-related error in the way in which drug quantities entered into his plea deliberations or contributed to the determination of his sentence, he would be unable to establish any actual prejudice he suffered as a result of such an error. Petitioner's 168–month sentence does not exceed the 20–year maximum sentence that applies to drug offenses involving indeterminate amounts of cocaine or cocaine base. *See* 21 U.S.C. § 841(b)(1)(C). Accordingly, even absent any stipulation or determination as to drug quantities, Petitioner still could have been sentenced to precisely the same term of imprisonment. This likely means that there is no *Apprendi* error at all here, and it certainly means that Petitioner has not been prejudiced by any such purported error. *See Stafford,* 258 F.3d at 477–79; *Burton,* 154 F.Supp.2d at 1084.

## IV. *CONCLUSION*

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Petitioner's October 31, 2000 Motion to Vacate, Set Aside, or Correct Sentence be TRANSFERRED to the Sixth Circuit Court of Appeals pursuant to 28 U.S.C. § 1631 for a determination whether Petitioner may file this motion with this Court.