**UNITED STATES, Appellee,**

v.

**David PEREZ–MONTAÑEZ, Defendant, Appellant.**

**United States, Appellee,**

v.

**Jose Raul Santiago–Rodriguez, Defendant, Appellant.**

**Nos. 98–1952, 98–2210.**

United States Court of Appeals, First Circuit.

Heard Nov. 2, 1999.

Decided Feb. 2, 2000.

Jorge L. Arroyo–Alejandro, by appointment of the Court, for appellant David Pérez–Montañez and Rachel Brill, by appointment of the Court, for appellant José Raúl Santiago, were on consolidated brief.

Mark Irish, Assistant United States Attorney, with whom Guillermo Gil, United State Attorney, Jorge E. Vega–Pacheco, Chief, Criminal Division, and Camille Vélez–Rivé, Assistant United States Attorney, were on brief, for appellee.

Before LYNCH, Circuit Judge, CAMPBELL, Senior Circuit Judge, and O'TOOLE, Jr.,* District Judge.

O'TOOLE, District Judge.

David Pérez–Montañez (Pérez) and José Raúl Santiago–Rodríguez (Santiago) were indicted for the federal crimes of carjacking, 18 U.S.C. § 2119, and carrying or using a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c)(1)(A). They were convicted on both counts and received life sentences for the carjacking offense. They filed timely notices of appeal. We have jurisdiction under 28 U.S.C. § 1291.

For the following reasons, we AFFIRM the convictions.

## I. Background

On February 8, 1996, David Vázquez–Rivera (Vázquez) was found dead at his job site, face down with a bullet wound in his back. He had been doing construction work alone at a house in Caguas, Puerto Rico; his car, a brown Toyota station wagon, was missing. Police received tips that the defendants and a third man, Carmelo Serrano–Benítez (Serrano), had formed a plan to steal Vázquez's car from him and use it for parts to repair a similar Toyota station wagon owned by Santiago.

Pursuing their investigation, the police went to Santiago's house. There was a white Toyota station wagon parked in the yard next to the residence. One of the officers, Ulysses Batalla Ramos (Batalla), later testified that, having obtained Santiago's consent, the police searched in and around the automobile and a shed located nearby on Santiago's property. They found a number of automobile parts. Also with Santiago's consent, they took away the white Toyota station wagon and many of the auto parts they had found. Some of the parts were eventually traced to Vázquez's car.

Pérez, Santiago, and Serrano all were indicted and all initially pled not guilty. Serrano later changed his plea, however, and he testified as a government witness against Pérez and Santiago at trial. In his testimony, Serrano said that, pursuant to an agreement with the other men, he drove Pérez and Santiago to the construction site where Vázquez was working, leaving them there to rob Vázquez of his Toyota, and then proceeded to another part of Caguas to await their return. Serrano testified that Pérez and Santiago did indeed return with Vázquez's car and told him that the robbery had gone badly and that they had killed Vázquez. Serrano was cross-examined at length regarding the plea bargain he had struck with the government that made him a cooperating witness and also regarding the conflicting versions of events that he had told at different times.

The government sought to introduce many of the auto parts seized from Santiago's residence, but the district court refused to admit several of those parts in evidence because the government could not establish the necessary foundation. The parts that were admitted, however, included a bumper that had been installed on Santiago's Toyota. Vázquez's mother identified the bumper at trial as one that had come from her son's car. She was able to recognize it because of a distinctive

* Of the District of Massachusetts, sitting by designation.

mark that had been left by a barbed wire fence that she had once driven into. She also recognized her son's tool kit among the effects seized from Santiago's property.

After brief deliberations, the jury found Pérez and Santiago guilty of both carjacking and the use of a firearm in relation to a crime of violence. On the carjacking convictions, both defendants were sentenced to life imprisonment, pursuant to subsection (3) of 18 U.S.C. § 2119.

## II. Search and Seizure

■ Santiago appeals the district court's denial of his motion to suppress the evidence obtained from the search of his property.[1] The district court found that the discovery of the white Toyota station wagon occurred because it was in plain view and that the subsequent seizure of auto parts from Santiago's property had been made with his "total, absolute and complete consent." Santiago challenges the latter part of the court's finding, arguing that no valid consent was given, and even if it was, the officers seized evidence which exceeded the scope of the consent. We will not disturb the district court's factual findings unless clearly erroneous and will uphold the court's denial of the motion to suppress if "any reasonable view of the evidence supports it." *United States v. Lanni,* 951 F.2d 440, 441 (1st Cir.1991); *see also United States v. Stanley,* 915 F.2d 54, 57 (1st Cir.1990).

■ Valid consent renders a warrantless search constitutionally permissible, and while consent must be voluntary to be valid, there is no requirement that the person who gave consent must have been explicitly advised of the right to withhold it. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 234, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (upholding refusal to suppress fruits of car search despite fact that con-

sent was obtained without informing car owner of right to refuse search). It is the prosecution's burden to establish, by a preponderance of the evidence, that consent was "freely and voluntarily given;" there must be more than mere acquiescence in the face of an unfounded claim of present lawful authority. *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) (suppressing fruits of search where consent was founded on police officer's false assertion that he had a search warrant). The district court's conclusion as to whether consent was freely given must take into account the totality of circumstances surrounding the interaction between the defendant and the authorities. *See United States v. Deutsch,* 987 F.2d 878, 883 (2d Cir.1993).

■ We find no error in the district court's conclusion that Santiago consented to the seizure. Batalla testified that Santiago was not threatened, intimidated or coerced, but rather that he invited the officers onto the property, permitted them to look around, and agreed to let them take away the white station wagon and the auto parts. The testimony was not inherently unbelievable, and, in the absence of a reason not to do so, we defer to the district court's first-hand evaluation of Batalla's credibility as a witness. The defendants try to make something of Batalla's testimony that he would have "obtain[ed] other means" to seize the evidence if Santiago had not consented. Batalla also testified that he never communicated such sentiments to Santiago, but even if he had, an officer's statement that he will "obtain other means" to seize evidence is not the same as saying that he is presently entitled, without the "other means," to the evidence. It is, therefore, not the sort of pretense to present lawful authority that *Bumper* forbids as a foundation for consent. Nor is there anything false or undu-

---

1. Though the argument on appeal is made in a consolidated brief filed for both Pérez and Santiago, it is doubtful that Pérez's Fourth Amendment rights were implicated by the

search. Our disposition of the issue makes unnecessary a determination of Pérez's interest.

ly coercive about a statement of an intention to seek other means to obtain access to property. Indeed, as Batalla explained, the "other means" he had in mind would have been a search warrant, which on any fair view of the evidence would have been amply supported by probable cause.

Nor did the district court err in concluding that Santiago gave voluntary consent to the seizure of all the auto parts taken by the officers. Although the form Santiago signed stated that the police could take a "part," singular, not "parts," plural, Batalla testified that Santiago orally agreed to the seizure of all the parts and even went so far as to help the officers load the parts into a police car. Again, it is not enough to overturn the district court's findings simply to argue that different findings might have been made. On the totality of circumstances described in the evidence, the district court could reasonably have concluded that Santiago voluntarily consented to the seizure of all the parts taken.

For these reasons, there was no error in the denial of the motion to suppress the fruits of the search of Santiago's property.

### III. Evidentiary Rulings

Pérez and Santiago challenge a variety of evidentiary rulings made by the district court during the course of the trial, arguing that each of the challenged rulings was error in itself and that the cumulative effect of the errors was to deny them a fair trial. We review the rulings for abuse of discretion before deciding what cumulative effect any errors may have had. *See United States v. Cardales*, 168 F.3d 548, 557 (1st Cir.1999). We find no abuse of discretion in the several challenged rulings.

■ The defendants objected to the admission of statements allegedly made by Santiago and Pérez which were recounted at trial by government witnesses. One witness testified that he heard Pérez make reference to a "hidden car" shortly after the homicide, and Serrano testified that

Santiago had encouraged him to stonewall the police, reassuring him that the government's case was weak and that everything would turn out well. Neither statement was hearsay, since either would be admissible against the declarant as a party admission under Fed.R.Evid. 801(d)(2)(A) and against the co-defendant as a statement of a co-conspirator under Fed. R.Evid. 801(d)(2)(E). It was not an abuse of discretion to admit the statements; neither carried a risk of unfair prejudice that so substantially outweighed its probative value that its admission would be unreasonable. Such statements are routinely admitted against criminal defendants. *See United States v. Ríos Ruiz*, 579 F.2d 670, 676 (1st Cir.1978).

■ Serrano was also allowed to testify about threats that he received, which he believed to have originated from Santiago. The evidence was admitted not to prove the truth of the threats or their origin but to show Serrano's motivation for having changed his version of events, which he did several times before trial. Indeed, Serrano's credibility was subjected to withering attack during cross-examination because of his inconsistent accounts. In this circumstance, the district court did not abuse its discretion in allowing the government to put the threats in evidence to try to explain why Serrano may have changed his story. *See United States v. Williams*, 993 F.2d 451, 457 (5th Cir.1993).

■ Serrano also testified that though he drove Pérez and Santiago to the scene of the crime, he did not expect to receive any compensation for his role. On cross-examination, he admitted that, in fact, he might have expected to receive some compensation. At this point, defense counsel sought to impeach him using the statement of facts adopted by Serrano as part of his plea bargain, which included the statement that Serrano expected to be paid but never was. The district court refused to allow the plea statement to be used primarily for two reasons: first, because the issue of Serrano's compensation had "nothing to do

with the essential elements of the offense" to which Serrano pled guilty and thus Serrano might have paid inadequate attention to that part of the statement when he adopted it, and second, because Serrano had already admitted in cross-examination that he might have expected to be compensated, thus exposing the very inconsistency that the defense sought to illuminate.

We are not convinced by the first rationale. The defense proffered, but was not allowed to show, that Serrano had adopted the factual statement in his plea bargain in every respect. It is speculative to surmise, as the district court apparently did, that Serrano may simply have overlooked the part of the statement of facts in his plea bargain that dealt with compensation. It would seem that any statement expressly adopted by the witness concerning facts that the witness is presently testifying about, whether or not the statement is part of a plea bargain, would qualify as a prior statement of the witness available as impeachment material under Fed.R.Evid. 613.

◼ Nonetheless, the second rationale provides an adequate basis to exclude the statement. The purpose of impeachment is to raise questions about the veracity of the witness's testimony, often by pointing out that the witness has given inconsistent versions of the same set of facts. The very inconsistency that the defendants wished to raise was exposed by the difference between Serrano's direct testimony and his testimony on cross-examination. It was not an abuse of discretion for the court to conclude that the factual recitation in the plea agreement would add little to what was already before the jury. Trial judges have wide latitude under the Sixth Amendment to limit repetitive or marginally relevant cross-examination. *See United States v. Anderson*, 139 F.3d 291, 302 (1st Cir.), *cert. denied sub nom. Coutermarsh v. United States*, —— U.S. ——, 119 S.Ct. 158, 142 L.Ed.2d 129 (1998).

◼ The defendants also contend that the notes of an FBI agent memorializing her interview with Serrano and her understanding of the statements he made during that interview ought to have been admitted. The trial court concluded, quite correctly, that Serrano never adopted those notes as his own statements and that if they were read to the jury they would constitute inadmissible hearsay.

◼ Finally, the defendants argue that the trial court should not have allowed several auto parts, which were eventually ruled inadmissible for lack of foundation,[2] to be displayed in the courtroom where the jury could see them and to be the subject of some *de bene* expert testimony. The district court only allowed the offending parts to remain in the courtroom as identified exhibits during the government's attempt to establish their foundation, and ordered them removed from the courtroom as soon as it was clear that no foundation would be established. It is difficult to see how a foundation for the admission of physical evidence might have been laid if the witness could not be shown the object. The district court also carefully instructed the jury to disregard any inference they may have drawn from either the sight of them or the testimony about them. That was an acceptable way of handling the matter.

In sum, all of the evidentiary rulings discussed above were within the range of appropriate discretion and provide no basis for reversal. Since we find no error in

---

**2.** The district court carefully admitted only those parts which the testimony of Batalla, Serrano, and the victim's mother linked to both the victim's car and Santiago's possession. The defendants objected to, and here appeal, that ruling. Their argument is entirely without merit. Only a "reasonable likelihood" that proffered evidence is what it purports to be need be shown to authenticate it. *See United States v. Alicea–Cardoza*, 132 F.3d 1, 4 (1st Cir.1997) (quoting *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir.1994)). That standard was faithfully applied, and the district court's ruling was well within its discretion. *See id.* at 4–5.

the various rulings, there is no cumulative effect to consider.

## IV. The Carjacking Convictions

Pérez and Santiago were convicted of carjacking under 18 U.S.C. § 2119. That statute reads in full as follows:

Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—

(1) be fined under this title or imprisoned not more than 15 years, or both,

(2) if serious bodily injury (as defined in section 1365 of this title, including any conduct that, if the conduct occurred in the special maritime and territorial jurisdiction of the United States, would violate section 2241 or 2242 of this title) results, be fined under this title or imprisoned not more than 25 years, or both, and

(3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

The district court apparently considered that the elements of the offense were set forth in the first, unnumbered paragraph of the statute and instructed the jury accordingly, without any objection from the defendants. After the defendants were convicted, the court sentenced them each to life imprisonment in accordance with subsection (3).

While this appeal was pending, the Supreme Court held that subsections (1), (2), and (3) of § 2119 define "three separate offenses by the specification of distinct elements, each of which must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict." *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 1228, 143 L.Ed.2d 311 (1999). The present form of

the statute is different in one respect from the statute considered in *Jones*. In 1994, Congress amended the initial, unnumbered paragraph of § 2119 by deleting the then-existing phrase "possessing a firearm as defined in section 921 of this title" and substituting in its place the current phrase "with the intent to cause death or serious bodily harm." The amendment thus altered the elements of the offense, eliminating as an element the possession of a firearm, and adding an element of specific intent. The Supreme Court's construction of the statute in *Jones* is not affected by this amendment, so the fact of the amendment does not provide any basis for distinguishing *Jones* or concluding that it does not lay down a rule that must be applied in this case.

What *Jones* held, and what is of importance here, is that subsections (1), (2), and (3) do not simply set forth sentencing options for the judge, but rather define separate offenses. A person may be sentenced under subsection (3) only if he has been convicted of the offense defined by subsection (3). And a person may be convicted of that crime only if the jury has found, beyond a reasonable doubt, the existence of the element set forth in subsection (3)—that death resulted from the carjacking.

Here, the indictment specifically referred to § 2119(3) and adequately set forth the elements necessary to convict Pérez and Santiago of the offense defined by that subsection, but the court omitted to instruct the jury that they could convict of that offense only if they found beyond a reasonable doubt that Vázquez's death resulted from the carjacking. The government suggests that the offense defined in § 2119(3) was adequately charged since the jury was instructed on the element of "inten[t] to cause death or serious bodily harm" contained in the initial, unnumbered paragraph. But subsection (3) requires more than proof of *intent* to cause death or serious bodily harm; it requires proof

that death *actually resulted.* They are different elements.

 The defendants urge now that the failure of the district court to instruct on the distinct offense element set forth in subsection (3) requires that their convictions of that offense be set aside. Because the defendants did not raise any objection to the instruction at trial, our review is for plain error. *See* Fed.R.Crim.P. 30 and 52(b). For us to find "plain error," there must be an (1) error, (2) that is plain, and (3) that affects substantial rights. *See Johnson v. United States,* 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). If those conditions are met, an appellate court may exercise its discretion to correct the error provided that a fourth criterion is also met: the error must have "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Olano,* 507 U.S. at 732, 113 S.Ct. 1770 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)).

 We need not dwell at length on the first two parts of this four-part inquiry; they are clearly satisfied. The interpretation of the carjacking statute announced in *Jones* applies to this case, as it must to any case on direct review, *see Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), and thus renders the district court's omission of the subsection (3) element from the jury instruction an "error." Furthermore, even though the error was not "plain" at the time of trial, "it is enough that an error be 'plain' at the time of appellate consideration." *Johnson,* 520 U.S. at 468, 117 S.Ct. 1544. Therefore, we move to the third and fourth parts of the plain error inquiry.

 An error does not "affect substantial rights" for the purposes of the third part of the plain error review unless it was "prejudicial," meaning that it "must have affected the outcome of the district court proceedings." *United States v. Colón–Muñoz,* 192 F.3d 210, 222 (1st Cir.1999) (quoting *Olano,* 507 U.S. at 734, 113 S.Ct. 1770).[3] This phase of the inquiry is substantially equivalent to the analysis for harmless error under Rule 52(a), with the important distinction that, no objection having been made in the trial court, it is the defendants' burden to convince us that the error complained of was prejudicial. *See id.*

 The defendants have not come close to making a convincing showing of prejudice. Their argument is both perfunctory and conclusory; they seem to think' that it is enough that they point out the *Jones* holding and the trial court's omission of an instruction consistent with that holding. In other words, they argue as if satisfying the first two steps of the plain error analysis is enough. It is not. *See United States v. West Indies Transp., Inc.,* 127 F.3d 299, 306 (3d Cir.1997) ("Defendants here have not brought to our attention any facts suggesting that a jury might have reached a conclusion different from the district court ...."), *cert. denied,* 522 U.S. 1052, 118 S.Ct. 700, 139 L.Ed.2d 644 (1998).

Considering the evidence that was before the jury and the jury's resolution of other issues presented to them, we have no difficulty concluding that the trial court's failure to instruct about the distinct element defined by subsection (3) had no

---

**3.** *Olano* allowed, without deciding, that "[t]here may be a special category of forfeited errors that can be corrected regardless of their effect on the outcome...." *Olano,* 507 U.S. at 734, 113 S.Ct. 1770. The Supreme Court has identified some kinds of cases that seem to fit this description. *See Johnson,* 520 U.S. at 468–69, 117 S.Ct. 1544. However, a case that concerns the omission of a single element of a criminal offense from a jury instruction is not such a case. *See Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 1833–37, 144 L.Ed.2d 35 (1999).

prejudicial effect on the defendants.[4] Under Count One of the indictment, the jury convicted the defendants of taking a motor vehicle from Vázquez by force and violence with the intent to cause death or serious bodily injury. Indeed, the indictment, which was read to the jury, specifically alleged that the "force and violence" consisted of "shooting him one time causing his death." Under Count Two, the jury convicted the defendants of using or carrying a firearm during and in relation to a crime of violence. Stated less formally, the jury found that when the defendants stole Vázquez's car from him, they were armed with a gun and they harbored the specific intent to cause death or serious bodily injury. They also had heard uncontroverted evidence that Vázquez died of a gunshot wound to the back (not to mention Serrano's testimony that the defendants admitted killing him). Even if it were hypothetically possible, it is as a practical matter inconceivable that this jury would have hesitated to find the omitted element beyond a reasonable doubt—that Vázquez's death resulted from the carjacking. In convicting the defendants in accordance with the instructions they received, the jury by necessity would have found the facts establishing the linkage between the defendants, the carjacking, and the bullet in Vázquez's back. *See, e.g., United States v. Hastings,* 134 F.3d 235, 244 (4th Cir.), *cert. denied sub nom. Phillips v. United States,* 523 U.S. 1143, 118 S.Ct. 1852, 140 L.Ed.2d 1100 (1998).

The fourth condition for finding plain error is not satisfied either. The overwhelming evidence that the carjacking resulted in death, coupled with the verdicts that were rendered, not only serves to allay any worry that the defendants' substantial rights were prejudiced but also adequately forestalls a conclusion that the omission of an instruction on the subsection (3) element could have seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Johnson* and a host of subsequent cases[5] have reached precisely the same conclusion under similar circumstances. *See Johnson,* 520 U.S. at 469–70, 117 S.Ct. 1544.

We find no plain error requiring reversal.

## V. Conclusion

For all the foregoing reasons, the judgments of conviction in each case are **affirmed**.

---

4. We doubtless would reach the same conclusion were it the government's burden to demonstrate an absence of prejudice, as it would be under harmless error review.

5. *See, e.g., United States v. Wilkinson,* 137 F.3d 214, 224 (4th Cir.), *cert. denied,* — U.S. ——, 119 S.Ct. 172, 142 L.Ed.2d 140 (1998); *United States v. Keys,* 133 F.3d 1282, 1286 (9th Cir.), *cert. denied,* — U.S. ——, 119 S.Ct. 211, 142 L.Ed.2d 173 (1998); *United States v. Schleibaum,* 130 F.3d 947, 949 (10th Cir. 1997); *United States v. Clifton,* 127 F.3d 969, 971 (10th Cir.1997); *United States v. Jackson,* 124 F.3d 607, 615 (4th Cir.1997); *United States v. Knapp,* 120 F.3d 928, 932 (9th Cir. 1997); *United States v. Sassanelli,* 118 F.3d 495, 499 (6th Cir.1997).