Lauriat, J.
Rafael Ortiz (“Ortiz”) stands indicted on charges of distribution of cocaine (001) and distribution of cocaine in a school zone (002). These charges arise from a search of an apartment following his arrest there by Lowell police officers executing an arrest warrant on March 1, 2001.
Ortiz has now moved to suppress from evidence at trial the fruits of that search, contending that there was no valid legal basis for the search. The court held an evidentiary hearing on the defendant’s motion on July 11, 2002. It heard testimony from Detectives James Hodgdon and John Finn of the Lowell Police Department, and from Jessica L. Parker. It also received in evidence a Lowell Police Department Consent to Search form (Exhibit 1).
Upon consideration of the testimony of the witnesses, the exhibit, and the memoranda and oral arguments of counsel, the court makes the following findings of fact and rulings of law on the defendant’s motion to suppress.
FINDINGS OF FACT
In mid-February 2001, Detective James Hodgdon (“Hodgdon”) of the Lowell Police Department learned from a confidential informant, with whom he had not previously worked, that a Spanish male named “Ralphie,” who lived with his girlfriend, Jessica Parker, in Apartment 1 at 19 Nesmith Street in Lowell, was dealing in drugs. Hodgdon and Lowell Police Detective *57 John Finn (“Finn”) conducted surveillance of 19 Nesmith Street for several days. They observed substantial foot traffic entering and leaving the building at 19 Nesmith Street. They also saw a female and a dark-skinned male arrive and leave in a Honda motor vehicle which they determined was owned by and registered to Jessica L. Parker of 19 Nesmith Street in Lowell.
Just prior to or during the police officers’ surveillance, Hodgdon had gone to Parker’s apartment at 19 Nesmith Street, ostensibly as part of an investigation he was conducting into an alleged armed robbery that had occurred nearby. Hodgdon met with and spoke to Parker, as well as to á male who apparently identified himself as Dario Ralph Rivas. Both individuals told Hodgdon that they lived in that apartment. Hodgdon identified himself as a police officer and spoke to them for five to ten minutes. He had a clear opportunity to view and identify Parker and Ortiz at that time.
Hodgdon thereafter used the Lowell Police Department computer in an attempt to learn Rivas’s true name. He determined that it was Rafael Ortiz, who was also known as Louis Danny Gomez. He also learned that Ortiz had two open criminal cases from Chelmsford, for which he had outstanding default warrants that had been issued in 1997.
On March 1, 2001, Hodgdon and Finn, accompanied by two Chelmsford detectives, set up surveillance of the apartment building at 19 Nesmith Street. When Finn observed Ortiz and Parker arrive in her Honda and enter the building, he radioed that information to Hodgdon and the others, who were nearby. Hodgdon, Finn and the two Chelmsford detectives immediately went to the apartment building and knocked on the door to Apartment 1. Ortiz answered the door and allowed the police to enter. Once inside, Finn and Hodgdon immediately advised Ortiz that they had outstanding warrants for his arrest, placed him in handcuffs, ordered Parker, who was present, to bring Ortiz a coat and boots, and took him from the apartment to a police vehicle and then to the Lowell Police Station.
After Ortiz had been removed from the apartment, Hodgdon, Finn, and the two Chelmsford detectives remained in Parker’s apartment. Finn told Parker that they wanted to search her apartment because they had information that drugs were being sold from the apartment and they believed that there were drugs there. Parker asked the officers if they had a search warrant, and they said that they did not. However, Hodgdon and Finn told Parker that she was not a target of their search or investigation, but that they would get a search warrant if she refused to consent to a search, and that if they found any illegal drugs, she would be arrested. At the hearing, Hodgdon conceded that when he made those statements to Parker, they did not have sufficient evidence to obtain a search warrant. Although Hodgdon also asserted that he and Finn had seen drugs and drug paraphernalia in plain view once they were inside Parker’s apartment, the court does not credit his testimony, and no such items were seized during the officers’ search of the apartment.
Hodgdon and Finn then presented Parker with a Lowell Police Department Consent to Search form which they had retrieved from one of their police vehicles parked outside Parker’s apartment. Hodgdon filled in most of the blanks on the form, although he did not correctly fill the blank stating that an officer of the Lowell Police Department had informed Parker of her constitutional right to refuse to allow a search of her living quarters. At Finn’s instruction, Parker printed and signed her name on the form. (Exhibit 1.) Hodgdon and Finn then proceeded to search Parker’s apartment for drugs and other contraband. After Firm told Parker that they didn’t want to make a mess of her apartment looking for the drugs, she directed them to the bathroom, where Finn found and seized a false-bottomed can of deodorant which contained a quantity of drugs in the form of pills and powder.
At the time that the police entered and searched Parker’s apartment she was 20 years old. Parker and Ortiz had been married in 1998. Although Parker apparently knew of Ortiz’s 1997 criminal matters and that he was in default on those matters, she had had no prior involvement with the police or the criminal justice system.
RULINGS OF LAW
The search and seizure effected in the home of Ortiz and Parker were conducted without a search warrant. Absent exigent circumstances or consent, the Fourth Amendment to the United States Constitution and Article 14 of the Declaration of Rights of the Massachusetts Constitution prohibit warrantless searches and seizures of a person’s home. Commonwealth v. Sanna, 424 Mass. 92, 96 (1997) (citations omitted); Commonwealth v. Walker, 370 Mass. 548, 555, cert. den., 429 U.S. 943 (1976). Here, the Commonwealth contends that the police obtained Parker’s consent prior to the search and seizure.[1]
When the Commonwealth cites consent as the basis for a warrantless search, it bears the burden of demonstrating “consent unfettered by coercion, express or implied, and also something more than mere acquiescence to a claim of lawful authority.” Id. at. 97. The Commonwealth must satisfy this burden by a preponderance of the evidence. Nix v. Williams, 467 U.S. 431, 444 n.5 (1984); United States v. Perez-Montauez, 202 F.3d 434, 438 (1st Cir. 2000); Commonwealth v. Perez, 13 Mass. L. Rptr. 296 (Mass. Super. 2001) (Agnes, J.).
The voluntariness of an individual’s consent is a question of fact to be determined under the circumstances of each case. Commonwealth v. Sanna, 424 Mass. at 97. It is a subjective test, focusing on the consenting individual rather than a hypothetical rea *58 sonable person. See Commonwealth v. Egan, 12 Mass.App.Ct. 658, 663 (1981); Grasso & McEvoy, Suppression Matters Under Massachusetts Law §11-3(f) (2001). In applying this test, the court must look to a number of factors to determine voluntariness. Grasso & McEvoy, supra §11 -3(f) (listing common factors). These factors include: (1) knowledge or notice of the right to refuse consent, Commonwealth v. Sanna, 424 Mass. at 98 n. 10; (2) presence or absence of a prior arrest record, Commonwealth v. Heath, 12 Mass.App.Ct. 677, 684 (1981); (3) whether the consenting individual was “strong-minded and intelligent,” Commonwealth v. Egan, 12 Mass.App.Ct. 658, 663 (1981); and (4) whether the consenting individual was alone when he or she gave consent, Commonwealth v. Cain, 361 Mass. 224, 227 (1972). No one factor will alone is dispositive. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973); Commonwealth v. Angivoni, 383 Mass. 30, 35 (1981).
Applying the facts found to the applicable law, the court concludes that Parker did not voluntarily consent to the search of 19 Nesmith Street, Apartment 1. The court bases this conclusion on one primary factor and several aggravating secondary factors.
I.
When Parker asked Finn and Hodgdon if they had a search warrant, Finn replied that they did not but that they could and would get one if she did not consent to a search. When such a statement of ability or intent to obtain a search warrant is well-founded, it will not undermine the voluntariness of consent given. United States v. Anderson, 752 F.Sup. 565, 568 (E.D.N.Y. 1990), citing United States v. Cruz, 701 F.Sup. 440, 447 (S.D.N.Y. 1988). However, when circumstances dictate that no search warrant should issue, a contrary statement of ability or intent to obtain a warrant is likely to qualify any consent to search as involuntary. See United States v. Momodu, 909 F.Sup. 1571, 1579-80 (N.D.Ga. 1995); United States v. Anderson, 752 F.Sup. at 568; United States v. Cruz, 701 F.Sup. at 447; 3 Wayne R. LaFave, Search and Seizure §8.2(c), at 653 (3d ed. 1996) (“(I]t may generally be said that a threat to obtain a search warrant is likely to be held to invalidate a subsequent consent if there were not then grounds upon which a warrant could issue”) (emphasis in original) (footnote omitted). Here, Hodgdon conceded that at the time of the search he probably lacked sufficient evidence to obtain a search warrant. Hodgdon’s concession thus casts serious doubt on the voluntariness of Parker’s subsequent consent to search.
II.
At the time of the search, Parker was 20 years old, she had never been arrested, and she was alone. Hodgdon and Finn told Parker that, even though she was not a target of their search or investigation, they would arrest her if they found drugs in 19 Nesmith Street, Apartment 1 following a with-warrant search. Implicit in their statements was a promise of leniency if Parker consented to a warrantless search.[2] Under these circumstances, the court concludes that Parker was particularly susceptible to coercion. See Commonwealth v. Heath, 12 Mass.App.Ct. at 684; Commonwealth v. Egan, 12 Mass.App.Ct. at 663; Commonwealth v. Cain, 361 Mass. 224, 227 (1972). Thus, the secondary factors cast additional doubt on the voluntariness of Parker’s consent to search.
Taken together, the primary and secondary factors in this case present a set of circumstances in which a naive, young woman was alone when confronted by police officers who told her that unless she allowed them to search her home they would return with a warrant and arrest her if they found any drugs. The court concludes that Parker’s consent was coerced and involuntary, and Ortiz’s motion to suppress must therefore be allowed.
ORDER
For the foregoing reasons, the defendant’s Motion to Suppress Evidence Obtained from Warrantless Search is ALLOWED.

There is no evidence of any exigent circumstances in the present case. The police arrested and removed Ortiz from the apartment before beginning their search. In addition, the police told Parker that without her consent to search, they would get a search warrant. If necessary, they could have secured the apartment while they sought a warrant. Perhaps most telling, given that the police were there ostensibly to arrest Ortiz, they had no reason or grounds to conduct a search of the apartment based upon that arrest.

Indeed, although Finn found and seized a quantify of cocaine in a location that Parker apparently directed them to, she was not arrested.