STATE OF MAINE                                    UCD-CR-16-1274
KENNEBEC, ss


STATE OF MAINE

v.                              **ORDER ON DEFENDANT'S MOTION TO**
                                          **SUPPRESS**
TAMMY CHAMBERLAIN


Before the Court is the Defendant's Motion to Suppress the test results of blood taken from the Defendant on March 24, 2016. Law enforcement found the Defendant at the scene of a serious, one-car accident in which her vehicle rolled several times, apparently ejecting her through the sun roof. She is charged with operating under the influence. The State is represented by Assistant District Attorney Alisa Ross, and the Defendant is represented by Attorney Walt McKee. A testimonial hearing on the motion was held on October 14, 2016 after which counsel for the parties submitted written arguments which were received by the Court on October 24, 2016. The Court has considered the testimony presented at hearing, has reviewed the six files on the video admitted as State's Exhibit 1, has considered their written arguments, and for reasons stated below grants the motion.

1

## Findings and Conclusions

At the October 14, 2016 hearing the State called Officer Marcus Neidner of the Gardiner Police Department who responded to the accident scene and is the primary investigator in this case. Officer Neidner testified that he responded to the accident scene in the early morning hours of March 24, 2016. At first he could not locate the driver, but it was apparent to him that the vehicle had rolled several times and the vehicle's air bags had deployed. He soon located the Defendant kneeling next to the vehicle which was in his opinion "totaled." The Defendant was bleeding from her torso and face, and was "very shaken up" and disoriented. She admitted to drinking, and the parties have stipulated that there was probable cause to believe that she was under the influence of alcohol at the time of operation. The issue presented is whether the Defendant consented to the blood draw which the parties agreed constituted a warrantless search of her person under Birchfield v. North Dakota, 579 U.S.____2016.

Throughout the first 4 files of the video, Officer Neidner is heard asking the Defendant to consent to having her blood drawn. The two paramedics who arrive at the accident scene shortly after Officer Neidner locates the Defendant also try to get her to agree to the blood draw. They are enlisted by the officer to take a blood draw, and when she is asked to consent she is heard to say, "whatever." However, she almost immediately resists their efforts to hold her arms in place so they can locate a vein. She refuses to follow their directions, and seems fixed on trying to get out of the neck collar they placed her in so they could safely transport her to the hospital. Her affect changes rapidly. She is laughing, then she is angry, and she cries and sometimes screams, particularly when they give her a shot of something to help her "calm down." While they do this after

2

telephonically consulting with another medical professional, it is clear that she does not consent to the administration of the sedative. Their efforts, which include having to restrain her from swinging at them, holding her down and strapping her to the ambulance stretcher, are all for naught as they are unable to obtain the blood requested by the officer.

The second file in the video depicts her shortly after arrival at the hospital and Officer Neidner asks the nurse to call the lab for him so that blood can be drawn. She is still crying and fairly incoherent. The third file shows her sobbing under warming blankets. She is asked by the lab technician if she will let her blood be drawn and the Defendant loudly replies, "No!" She is told by the technician that she really does not have any choice and the Defendant continues to cry. Officer Neidner tells the technician that he will help walk her through the blood draw process and shows her how to fill out the forms. The technician keeps attempting to obtain consent from the Defendant and at one point the Defendant is heard to say, "Take it." She is then asked if she will give her verbal ok even if does not sign the form, but she does not respond.

Officer Neidner is heard to advise the nurse to "Take it while she is in the giving mood", and it appears that the blood draw process begins. The Defendant screams "Ow!" and continues to cry. She is heard to say she does not want to sign the consent form even after being told that the hospital needs to take her blood. After the draw is complete, Officer Neidner and the lab techs begin dividing up the vials of blood and begin completing paper work.

The fourth file[1] shows the Defendant after the blood draw. She is still crying and moaning. One of the lab technicians comes over to Officer Neidner with what is

---

[1] Files 5 and 6 were reviewed by the Court but they did not contain anything pertinent to the issue before the court, namely consent.
[2] In the State's brief on page 5 the lab technician is quoted as saying "agreed, but didn't sign." The Court did not hear

3

apparently a consent form signed by the Defendant. She says, "Can't say she agreed to it but she did sign."[2]

The State has the burden to prove by a preponderance of evidence that the Defendant consented to this warrantless search of her person. As stated by the Law Court in *State v. Nadeau,* 2010 ME 71, ¶ 71, consent can be proven by "an objective manifestation...by word or gesture." While it is accurate to say, as the State notes, that there were several times seen in the video where the Defendant signifies that she is willing to give blood, it is clear that those moments are, to say the least, fleeting. She does say "whatever" when told before she is sedated at the scene that she will have to give them a blood sample because she is too injured to give a breath test. However, after she is forcibly medicated, her mood soon worsens and she persists in either saying she will not consent or she simply does not respond to the requests that she do so. She is also heard to say at one point, "Ok" and at another, "Take it" but then she refuses to give verbal consent when asked to confirm the statement.

After she is told by one of the lab technicians that she really does not have any choice in the matter, she stops physically resisting and one of the technicians is able to fill a number of vials with her blood. After the blood draw, the other technician tries to get her to sign the consent form which she apparently does off camera. However, as noted above, the technician's report of the consent "process" is telling. She reports to Officer Neidner, "Can't say she agreed to it but she signed."

The Court cannot find on this record that the Defendant either expressly or impliedly consented to the warrantless search of her person. It was not knowingly or

---

[2] In the State's brief on page 5 the lab technician is quoted as saying "agreed, but didn't sign." The Court did not hear the technician's statement to be as represented by the State.

voluntarily given. The Court agrees with the Defendant that her response to the request for consent is better characterized as "acquiescence to a claim of authority" [*U.S. v. Marshall,* 348 F. 3d 281, 285 (1st Cir. 2003) ] or "mere submission" to police authority. *Florida v. Royer,* 460 U.S. 491, 497 (1983). Neither of those responses or states of mind equate to consent.

The entry will be: Defendant's Motion to Suppress the results of the blood draw taken from the Defendant's person on March 24, 2016 is GRANTED.

11/29/16
**DATE**

**SUPERIOR COURT JUSTICE**

5